# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 9, 2026

Lyle W. Cayce
Clerk

No. 25-60415

Monnie Villarreal,

*Plaintiff—Appellant*,

*versus*

VitalCore; Nancy Unknown, *Nurse Practitioner, VitalCore/Jackson County*; John Ledbetter, *Sheriff*; Geneva Drummond,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:24-CV-99

Before Richman, Higginson, and Douglas, *Circuit Judges*.
Stephen A. Higginson, *Circuit Judge*:[*]

Monnie Villarreal was arrested for violating the terms of his post-release supervision that had been imposed after his conviction for insurance fraud. While in custody, Villarreal filed a 42 U.S.C. § 1983 complaint against the detention center's medical services provider, VitalCore, and a nurse, alleging mismanagement of his diabetes medication and treatment. He later

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

amended his complaint to include additional claims against Mississippi correctional officers (along with the nurse and medical provider, collectively referred to as "Defendants"). Defendants separately moved for summary judgment on exhaustion grounds. Villarreal opposed the motions, arguing that, because he was a "pretrial detainee" rather than a post-conviction prisoner, the Prison Litigation Reform Act ("PLRA") did not require him to exhaust the Mississippi Department of Corrections ("MDOC") Administrative Remedy Program ("ARP"). The district court granted summary judgment in favor of Defendants, concluding that Villarreal was required to use the ARP program and did not do so.

We agree that Villarreal failed to exhaust his administrative remedies prior to filing his lawsuit. We thus AFFIRM.

I.

In May 2018, Villarreal pleaded guilty to conspiracy to commit insurance fraud and was sentenced to five years in custody with the MDOC, with credit for time served and the remainder of the sentence to be served on post-release supervision. *Villareal v. State*, 349 So. 3d 210, 211 (Miss. Ct. App. 2022).

Villarreal did not comply with the conditions of his supervision. In 2020, the trial court revoked his term of supervision and sentenced him to three years of imprisonment. *Id.* It suspended the remainder of his sentence and again imposed post-release supervision. *Id.*

On February 6, 2024, Villarreal was arrested for a probation violation and was taken into custody at Jackson County Adult Detention Center ("JCADC"). Villarreal alleged that, soon after his arrival at the JCADC and while he was waiting for his probation-violation case to be determined, he was denied adequate medical care in the management of his diabetes. On February 10, Villarreal asked to see a doctor because he was

"undermedicated with only 2-4 units of insulin a day," which resulted in him entering suicide watch and experiencing dizziness and blurry vision. On February 16, an unknown nurse practitioner administered 30 units of insulin, causing Villarreal's blood sugar to drop from "240 to 64 in two hours" and exacerbating his blurry vision. Villarreal alleged that the nurse "forced [him] to take [the insulin] or stay in the hole." Villarreal further claimed that Defendants' reliance on "an out of state pharmacy instead of a licensed doctor within the state of Mississippi" caused the incident.

On February 25, Villarreal submitted an "inmate request" on a JCADC kiosk to report the diabetes mismanagement. According to the JCADC inmate handbook, the "Inmate Request system on the kiosks are to be used . . . when requesting services, directing questions . . . or filing a grievance." On February 26, the request was forwarded to medical, and Villarreal's medication was "adjusted by the nurse practitioner." The request was then designated as "closed" in the inmate request system.

On March 28, Villarreal filed his § 1983 lawsuit in the Southern District of Mississippi, asserting claims arising out of the medication mismanagement incident. In his pro se complaint, Villarreal indicated that he submitted a grievance "on the kiosk" to administratively exhaust his claims.

Meanwhile, on April 10, the Mississippi court revoked Villarreal's post-release supervision a second time, finding that Villarreal failed to report to the MDOC as directed during his supervision term, did not permit the field officer to visit him at home, and failed to pay supervision fees and court fines and fees. The court sentenced him to serve the remainder of his original five-year sentence in the MDOC.

On April 21, while he was still detained at the JCADC, another inmate assaulted Villarreal with a broom handle. Villarreal alleged that he called for help and was scared for his life, but "Corporal Dees" ignored his

pleas. Villarreal alleges that this disregard was in retaliation for his existing suit against VitalCore. Villarreal was transported to the hospital and sustained injuries to his head and fingers.

On April 23, Villarreal submitted a separate inmate request through the JCADC kiosk concerning the April 21 incident. On April 24, the incident was marked "closed," indicating that the "issue [had] been brought to investigators['] attention."

Shortly after this second incident, on April 26, Villarreal was transferred from JCADC to MDOC custody.

On June 20, Villarreal sought to amend his complaint to include the assault claim, adding Sheriff John Ledbetter and "Corporal Dees," properly known as Geneva Drummond, as Defendants. Villarreal later clarified that he also sued Sheriff Ledbetter for his failure "to uphold his policies" and to oversee "the conduct of his employees" with regard to Villarreal's "safety and wellbeing" during both incidents.

Other than the inmate requests submitted through the kiosk at the JCADC, Villarreal filed no other administrative grievances related to the two incidents underlying his lawsuit.

## II.

Below, Defendants moved for summary judgment on the ground that Villarreal failed to exhaust his administrative remedies prior to filing suit as required by the PLRA. Particularly, Defendants produced evidence demonstrating that MDOC ARP policy requires MDOC inmates, including those in JCADC detention, to complete a two-step process to exhaust their administrative remedies before filing suit. First, as instructed in the JCADC handbook, which is "readily available to all inmates" and "located on a kiosk" at the JCADC, inmates "may file a grievance" by using

the JCADC's inmate request system to clearly describe the circumstances giving rise to the grievance. Second, if an inmate is unsatisfied with the response to that request, inmates "*who have been sentenced* to the" MDOC "have access to the Administrative Remedy Program," which "should be used only after the inmate utilizes the normal grievance procedure." Thus, Defendants argued that, because Villarreal failed to complete the MDOC's ARP process prior to filing his lawsuit, his claims were unexhausted.

Villarreal opposed the motions. He argued, *inter alia*, that, because he was a "pretrial detainee" in county detention—not a state prisoner in MDOC custody—he was not required to utilize MDOC's ARP to fully exhaust his administrative remedies. He further argued that the ARP was unavailable to him while at the JCADC.

The magistrate judge issued a report recommending that the motions for summary judgment be granted for Villarreal's failure to exhaust.[1] Specifically, the magistrate judge determined that Villarreal failed to comply with the second step of the MDOC ARP before filing suit, and, contrary to Villarreal's "pretrial detainee" arguments, he was a convicted MDOC prisoner at the time he filed his lawsuit, merely being housed in JCADC, and thus was required to exhaust through the MDOC ARP. The magistrate judge further rejected Villarreal's arguments that the administrative remedies were unavailable to him.

---

[1] Additionally, the magistrate judge recommended that Villarreal's motion for leave to amend his complaint be denied as moot. The district court adopted this recommendation and denied the motion. Because Villarreal does not appeal the district court's denial of his motion for leave to amend, we need not address it. *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004) (explaining that a party waives an argument by failing to raise it in its opening brief).

No. 25-60415

Villarreal filed objections. The district court overruled Villarreal's objections and adopted the report and recommendation, dismissing all claims without prejudice for failure to exhaust administrative remedies. Villarreal unsuccessfully moved for reconsideration before timely appealing to this court.

III.

We review the grant of summary judgment for failure to exhaust *de novo*. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is mandatory and requires full compliance with an agency's deadlines and procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 85, 90 (2006). We take a "strict" approach to the PLRA's exhaustion requirements. *Wilson v. Epps*, 776 F.3d 296, 299–300 (5th Cir. 2015). This requires a petitioner to "pursue[] the grievance remedy to conclusion"; substantial compliance is insufficient. *Bargher v. White*, 928 F.3d 439, 447 (5th Cir. 2019), *as revised* (July 2, 2019) (quoting *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)). "Exhaustion is an affirmative defense; the defendants have the burden of proving that the plaintiff failed to exhaust available administrative remedies." *Cantwell v. Sterling*, 788 F.3d 507, 508–09 (5th Cir. 2015).

The MDOC's ARP is "the formal administrative remedy mechanism for use by all inmates committed to the custody of MDOC"

6

before they can file suit. *See Wheater v. Shaw*, 719 F. App'x 367, 369–70 (5th Cir. 2018) (describing two-step ARP process); *see also Wilson*, 776 F.3d at 300 n.2 (same). While MDOC encourages inmates to "seek solutions to their concerns through informal means," inmates are "required to use" the ARP's formal procedure prior to filing a lawsuit. The ARP provides that it applies to "all inmates confined in, or committed to MDOC."

It is undisputed that Villarreal failed to submit his grievances through the MDOC's ARP, instead submitting only inmate requests through the JCADC kiosk. Rather, Villarreal argues that, because "[s]upervision is not custody" and a "suspended sentence with probationary supervision does not equal commitment to MDOC custody," he was not required to exhaust the MDOC's ARP. He further argues that the only administrative remedies accessible were the inmate request forms on the JCADC kiosk and that the ARP was otherwise unavailable to him.

Defendants have met their burden of showing that Villarreal was a prisoner subject to the PLRA at the time of his post-release supervision in JCADC custody. His status as a detainee awaiting revocation of his post-release supervision does not eliminate his obligation under the PLRA to exhaust his administrative remedies prior to filing suit. The duty to exhaust administrative remedies is tied to one's status as a "prisoner" at the time of filing suit. *See Janes v. Hernandez*, 215 F.3d 541, 543 (5th Cir. 2000) (recognizing that administrative exhaustion only applies to individuals who are prisoners at the time they file suit); *Bernal v. Bexar County*, 757 F. App'x 316, 319–20 (5th Cir. 2018); *see also Kerr v. Puckett*, 138 F.3d 321, 322–23 (7th Cir. 1998) (explaining that a litigant's status as a prisoner is assessed at the time the suit is filed). The PLRA defines a "prisoner" as "any person incarcerated or *detained* in any facility who is *accused of*, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the *terms and conditions of parole, probation, pretrial release, or diversionary*

*program.*" 42 U.S.C. § 1997e(h) (emphasis added). By this plain definition, Villarreal falls under the PLRA's reach.

In similar circumstances, we have explained that "to determine whether [a litigant] is a 'prisoner' within the meaning of the PLRA, we must answer two questions: (1) whether [the individual] is 'incarcerated or detained in any facility' and (2) if so, whether it is as a result of his criminal conviction." *Jackson v. Johnson*, 475 F.3d 261, 265 (5th Cir. 2007). Both are easily satisfied here. First, Villarreal was detained full-time at the JCADC at the time he filed the instant lawsuit. Second, there is no dispute that Villarreal's detention was a result of his original Mississippi state criminal conviction and sentence for conspiracy to commit insurance fraud. Villarreal was arrested for violating the terms of his supervision imposed as a sentence and was awaiting revocation. *See* 42 U.S.C. § 1997e(h) (explicitly including individuals who are "accused of" violating "terms and conditions of" parole, probation, or diversionary programs); *cf. Ojo v. I.N.S.*, 106 F.3d 680, 682–83 (5th Cir. 1997) (holding that an individual detained for an immigration offense was not a "prisoner" within the meaning of the PLRA because, under a nearly identical provision in 28 U.S.C. § 1915(h), there was an "absence of immigration regulations from the laundry list of other things one might violate," including "parole, probation, and the like"). Villarreal's status as a detainee awaiting revocation qualifies him as a prisoner at the time he filed suit and subjects him to administrative exhaustion under the PLRA.

Furthermore, Villarreal has failed to create a dispute of fact as to whether he was specifically subject to the MDOC ARP for exhaustion purposes while detained at the JCADC. Exhaustion rules "are defined not by the PLRA, but by the prison grievance process itself," *Jones v. Bock*, 549 U.S. 199, 218 (2007). Defendants submitted evidence that Villarreal was an MDOC inmate in custody at the JCADC for violating the terms of his post-release supervision, which had been imposed "under the supervision of the

Mississippi Department of Corrections." Section 47-7-34 of the Mississippi Code provides that "[p]ost-release supervision programs shall be operated through the probation and parole unit of the Division of Community Corrections of the department," with "department" defined as the Mississippi Department of Corrections. Miss. Code Ann. § 47-7-2; *id.* at § 47-7-34(3).

Moreover, the JCADC handbook, accessible to all persons incarcerated at the JCADC, explicitly provides that inmates "who have been sentenced to the Mississippi Department of Corrections" detained at the Jackson County facility "have access to" the ARP, which should be used "only after the inmate utilizes the normal grievance procedure." The "normal grievance procedure" begins with the "inmate request procedure on the kiosks" and should be used when "filing a grievance." In sum, because Villarreal was "committed to MDOC" while he was detained at the JCADC awaiting revocation, he was subject to MDOC exhaustion procedures. His submission of inmate requests on the JCADC kiosk was insufficient to exhaust his administrative remedies under MDOC policy.

Villarreal's remaining arguments as to the availability of the MDOC ARP grievance procedure lack support in the record and are without merit.[2]

Summary judgment for failure to exhaust administrative remedies was proper.

## IV.

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[2] We need not address Villarreal's December 12, 2024, ARP grievance because it is factually unrelated to the incidents giving rise to this lawsuit.